FILED
2020 Jun-03  AM 09:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PURE FITNESS, LLC**, individually and behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | **CLASS ACTION** |
| **THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD FIRE INSURANCE COMPANY; AND TWIN CITY FIRE INSURANCE COMPANY**, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Pure Fitness, LLC ("Pure Fitness" or "Plaintiff"), both individually and on behalf of all others similarly situated, files this class action Complaint against Defendants The Hartford Financial Services Group, Inc., Hartford Fire Insurance Company and Twin City Fire Insurance Company (collectively, "Defendants" or "The Hartford").  In support of its claims, Plaintiff states the following on information and belief, except where specifically identified as being based on personal knowledge:

### INTRODUCTION

1.    On personal knowledge, Plaintiff Pure Fitness is a personal fitness

establishment, which occupies and leases premises located at 1425 Montgomery Highway, Suite 115, Vestavia, Alabama 35216.

2.    To protect the business and the income from operation of the business, Pure Fitness purchased a property insurance policy issued by The Hartford with policy number 08 SBA AB 9900 (the "Policy").

3.    Under the Policy, The Hartford is responsible for, *inter alia*, claims handling, including receiving and managing claims and loss notices, responding to questions about insurance and coverage and paying claims for covered losses and receiving process served on The Hartford's designated agent in connection with denial of claims.

4.    The Policy is a bilateral contract: Plaintiff agreed to pay monthly premiums to Defendants, in exchange for Defendants' promises of coverage for certain losses.

5.    Among other types of coverage, the Policy protects Plaintiff against a loss of business income due to a "suspension" of the business's "operations" due to direct physical loss of or damage to property at the premises of the business. This type of coverage is often referred to as business interruption coverage.

6.    The Policy also provides "Extra Expense" coverage, under which Defendants promised to pay expenses incurred that would not have been incurred absent the physical loss of or physical damage to property at the premises of the

business.

7.      The Policy also provides "Business Income from Dependent Properties" coverage, under which Defendants promised to pay for the loss of business income sustained due to direct physical loss of or physical damage at the premises of a dependent property caused by or resulting from a "Covered Cause of Loss."

8.      Additionally, the Policy provides "Civil Authority" coverage, under which Defendants promised to pay for loss of business income sustained when the action of a civil authority prohibits public access to the business premises.

9.      Plaintiff duly complied with its obligations under the Policy, and paid the requisite premiums.

10.      Beginning in March 2020, Plaintiff was forced to suspend business operations due to risk of infection by the novel coronavirus (hereinafter "COVID-19") and/or actions of civil authorities prohibiting public access to and occupancy of the business premises and rendering occupancy of the premises by customers unlawful and untenantable. This suspension of the business's operations, which is ongoing, has caused Plaintiff to suffer significant losses.

11.      Under the Policy, Defendants promised to cover these losses, and is obligated to pay for them. But in blatant breach of its contractual obligations, Defendants have failed to pay for these losses.

12.    Defendants have failed to pay for similar losses of other insureds holding policies that are, in all material respects, identical.

## THE PARTIES

13.    On personal knowledge, Plaintiff Pure Fitness, LLC is an Alabama limited liability corporation.  This business occupies and leases premises located at 1425 Montgomery Highway, Suite 115, Vestavia Hills, AL  35216.  Among other things, Pure Fitness provides personal fitness instruction, equipment and workout space for its members and clients.

14.    Defendant The Hartford Financial Services Group, Inc. is a foreign corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.

15.    Defendant Hartford Fire Insurance Company is a foreign corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.  Hartford Fire Insurance Company is a subsidiary of The Hartford Financial Services Group, Inc.

16.    Defendant Twin City Fire Insurance Company ("Twin City") is a foreign corporation organized under the laws of Connecticut, with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.  Twin City is a subsidiary of Hartford Fire Insurance Company.

17.    At all times material, Defendants engaged in substantial and not

isolated activity on a continuous and systematic basis in the State of Alabama, namely by issuing and selling insurance policies in Alabama s and by contracting to insure property located in Alabama.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims occurred within the Northern District of Alabama and property that is subject of the action is situated in this District.

20.     This Court has personal jurisdiction over the Defendants because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Alabama; Defendants breaching a contract in Alabama by failing to perform acts required by contract to be performed in Alabama; and Defendants contracting to insure property in Alabama, including but not limited to the premises insured under the Policy. Defendants also purposefully availed

themselves of the opportunity of conducting activities in the State of Alabama by marketing their insurance policies and services within Alabama, and intentionally developing relationships with brokers, agents, and customers within Alabama to insure property within Alabama, all of which resulted in the issuance of policies at issue in this action.

## FACTUAL BACKGROUND

### *The Policy*

21.    On personal knowledge, on or about October 11, 2019, Plaintiff renewed the Policy.  The Policy has a policy period of October 11, 2019 to October 11, 2020.  The scheduled premises under the Policy is 1425 Montgomery Highway, Suite 115, Vestavia Hills, Alabama 35216.[1]

22.    The Policy is an all-risk insurance policy. An "all risk policy" covers all risks of loss that may happen (except by fraudulent acts of the insured), no matter their source and however fortuitous the event or circumstance may be, as long as it is beyond the control of the insured and unless the policy contains a specific provision expressly excluding the loss from coverage.[2]  Plaintiff need not prove the precise cause of the loss or damage to demonstrate the coverage exists under the

---

[1] A true and correct copy of the Policy that was provided to Plaintiff is attached to this complaint as Exhibit "A" and incorporated herein by reference.

[2] All Risk policies differ from "enumerated risk" policies that only covered certain listed risks such as fire, lightning, wind, theft, collapse, etc. Insurers developed all risk policies to provide more comprehensive coverage than had previously been offered. STEVEN PLITT ET AL, 10A COUCH ON INSURANCE 148:50 (3RD ED.).

Policy, or that the loss or damage was occasioned by an external cause, but simply that the loss was due to a fortuitous circumstances or event.

23.     Consistent with the all-risk nature of the Policy, Defendants specifically agreed they "will pay for direct physical loss of or physical damage to Covered Property at the [schedule] premises…caused by or resulting from a "Covered Cause of Loss," which is then defined as "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is excluded or limited in the Policy.  Despite being in all capital letters, this term is not defined anywhere in the Policy.  Nor is the phrase "direct physical loss of or physical damage to". Any ambiguities in the use of such terms in the Policy are to be construed in favor of finding coverage under the Policy.

24.     In the Policy, Defendants also promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. In particular, Defendants promised to pay for losses of business income sustained as a result of a "suspension" of business "operations" during the "period of restoration."

25.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income."

26.     Pursuant to this section of the Policy, Defendants promised to pay for "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration' … caused by direct physical loss

of or physical damage to property at the 'scheduled premises.'"

27.    Each of the operative terms of this coverage provision is defined as follows.

28.    "Business Income" means "(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll."

29.    "Suspension" means "(a) The partial slowdown or complete cessation of your business activities; or (b) That part or all of the "scheduled premises" is rendered untentantable [sic] as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy."  The term "suspension" is used in the same manner throughout this Complaint.

30.    "Period of restoration" means the period of time that:

a.   Begins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss at the "scheduled premises", and

b.   Ends on the date when:

(1) The   property at the "scheduled premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

(2) The date when your business is resumed at a new, permanent location.

31.    Another type of coverage provided by the Policy is for Extra Expense. This coverage is specifically provided for in a section of the Policy titled "Extra

Expense."

32.     Pursuant to this section of the Policy, Defendants promised to pay for "reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises.'"

33.     Additionally, under the Policy, Defendants also promised to provide coverage for "Extended Business Income."  Specifically, Defendants promised to:

> pay for the actual loss of Business Income incurred during the period that:
>
> (a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> (b) Ends on the earlier of:
>
> > (i)   The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or
> >
> > (ii)  30 consecutive days after the date determined in (1)(a) above.

34.     The Policy also provides "Civil Authority" coverage for "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'."  This coverage begins "72 hours after the order of a civil authority and coverage will end at the earlier of: (a) When access is permitted to your 'scheduled premises'; or (b) 30 consecutive days after the order of the civil authority."

35.    This Civil Authority provision is an independent basis for business interruption coverage. That is, it can be triggered even when the standard business interruption coverage is not.

36.    Accordingly, because the Policy is an all-risk policy and the losses that Plaintiff has suffered are within the scope of the Policy as these losses are occasioned by a fortuitous happenstance or event beyond the control of the Plaintiff, those losses are covered and The Hartford is obligated to pay for such losses.

***Plaintiff's covered losses***

37.    On March 13, 2020, the Governor of Alabama, Kay Ivey, declared a public health emergency in response to the appearance of COVID-19 in the State of Alabama.

38.    As of March 27, 2020, according to the Alabama Department of Public Health, COVID-19 was pervasive throughout the State of Alabama and was present in a majority of Alabama's counties, including Jefferson County.

39.    The pervasive presence of COVID-19 throughout this State and the public health emergency it has created has prompted actions by civil authorities throughout the United States ("Civil Authority Actions"), including but not limited to civil authorities with jurisdiction over the facility: the County of Jefferson, and the State of Alabama. As a result of these Civil Authority Actions that were based on fortuitous events and were issued as a direct result of concerns over risks of direct

physical losses to property, both in terms of the Plaintiff's premises and areas immediately surrounding the premises, public access to the premises was prohibited.

40.    On March 19, 2020, the Jefferson County Health Officer issued an order closing all non-essential businesses, including gyms like Pure Fitness.

41.    Consistent with the actions of all states nationwide, On March 27, 2020, the State Health Officer of Alabama issued a Statewide Order Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19.  This Order, which expressly covers Jefferson County, required all fitness facilities (gyms) to close, and prohibited public access to gyms' premises.

42.    On April 3, 2020, the State Health Officer signed an Order Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19, as Amended, and specifically ordering residents of Jefferson County, among other counties, "to stay at his or her place of residence except as necessary to perform … "essential activities".[3]

43.    On April 28, 2020, the State Health Officer signed an Order (the "Safer at Home Order") reopening certain portions of the State's economy, but still requiring fitness facilities to remain closed until a later date.[4][5]

44.    There has been a risk of direct physical loss of and/or damage to the

---

[3] https://governor.alabama.gov/assets/2020/04/2020_04_03_20-Revised-SOE.pdf
[4] https://governor.alabama.gov/assets/2020/04/Safer-At-Home-Order-Signed-4.28.20.pdf
[5] The Orders and Ordinances referenced in paragraphs 37-43 are collectively referred to as the "Civil Authority Actions."

premises and property at the premises caused by a fortuitous event covered under the Policy that occurred during the Policy period. Plaintiff's business sustained an actual loss of business income, as access to the premises was specifically prohibited by the Civil Authority Actions. This caused or resulted in direct physical loss of or damage to the property by, *inter alia*, denying or preventing access to the property; the loss of use of tangible physical property within the premises; preventing customers from physically occupying the property, causing the property to be uninhabitable and untenantable by customers and rendering the facility unfit for occupancy; causing the function of the premises to be nearly eliminated or destroyed, and/or causing a decline in use and suspension of business operations on the premises that could result in a diminution of value of the premises. Plaintiff has been unable to operate at all. Plaintiff has also sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties. Plaintiff has also incurred increased sanitizing costs and ongoing payroll obligations.

45.    Plaintiff's business has suffered a loss of business income as a result of the suspension of normal business operations as defined in the Policy in terms of a total cessation of business activities on the premises. Such cessation was necessary due to, *inter alia,* the Civil Authority Actions that prohibited public access to the premises for reasons beyond its control. In compliance with the Civil Authority Actions, Plaintiff did not provide any services for almost two months and ceased

operations entirely.  During this time, Plaintiff's customers were prohibited from accessing the property premises at all. This suspension of operations was caused by a risk of direct physical loss caused by fortuitous events and resulted in direct physical loss of or damage to the premises as set forth above.

46.    Plaintiff was unable to reopen until May 11, 2020, and then was only able to reopen at 25% capacity.  Plaintiff has not, at the time of the filing of this action, returned to normal business operations, and it is unlikely Plaintiff will be able to fully restore its operations in the near future to the condition that would have existed if no loss had occurred or no Civil Authority Actions had been taken.

47.    Because the Policy is an all-risk policy, and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

48.    Accordingly, Plaintiff provided notice of its losses and expenses to Defendants, consistent with the terms and procedures of the Policy.

49.    But contrary to the plain language of the Policy and Defendants' corresponding promises and contractual obligations, by letter dated March 26, 2020, which included a form denial, Defendants refused to pay for Plaintiff's covered losses and expenses under the terms of the Policy.

50.    This appears to be consistent with the position Defendants have taken nationwide.  As stated on The Hartford website, "Most property insurance includes

business interruption coverage, which often includes civil authority and dependent property coverage. This is generally designed to cover losses that result from direct physical loss or damage to property caused by hurricanes, fires, wind damage or theft and is not designed to apply in the case of a virus." https://www.thehartford.com/coronavirus/businesses (emphasis added)[6].

## CLASS ACTION ALLEGATIONS

51.    The class claims all derive directly from a single course of conduct by Defendants: the systematic and uniform refusal to pay insureds for covered losses and the actions taken by civil authorities to suspend business operations.

52.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, both individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

53.    Plaintiff seeks to represent a class of persons and entities located in Alabama and such other states as the Court may deem appropriate defined as follows (collectively, the "Class" or "Classes"):

a)    All persons and entities with Business Income coverage and/or

---

[6] Defendants added this self-serving interpretation of their policy language on or about April 11, 2020 after the losses at issue had already begun to take place.

Extended Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business operations and for which Defendants has either actually denied or stated it will deny a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Business Income Coverage Class").

b)      All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendants that suffered a suspension of business operations and for which Defendants has either actually denied or stated it will deny a claim for the expenses or has otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extra Expense Coverage Class").

c)      All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants that suffered an actual loss of Business Income and/or Extra Expense caused by an action of a civil authority that prohibited public access to the premises, and for which Defendants has either actually denied or stated it will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Civil Authority Coverage Class").

54.      Excluded from each of the proposed Classes are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees,

successors, or assigns; governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

55.    Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

56.    This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

## Numerosity and Ascertainability

57.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across Alabama and the United States.

58.    The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Predominance of Common Issues**

59.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)      Whether Plaintiff and the Class members suffered a covered loss under the policies issued by Defendants to members of the Class;

b)      Whether Defendants wrongfully denied all claims based on the assertion that any suspension, interruption or slowdown of business they claim as being attributable to COVID-19 is not a covered loss;

c)      Whether Defendants' Business Income coverage applies to a suspension of business caused by the presence, risk or threat of COVID-19;

d)      Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by the suspension of business during the outbreak of COVID-19 in the United States;

e)      Whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business;

f)      Whether Defendants have breached its contracts of insurance through a uniform and blanket denial of all claims for business losses where such claims are related to COVID-19 and/or the actions of civil authorities;

g)      Whether Plaintiff and the Class members suffered damages as a result of Defendants' actions; and

h)      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**Typicality**

60.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants. Plaintiff and the other Class members are all similarly affected by Defendants' refusal to pay under their property insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

61.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of

Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation.

62.    Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor its counsel has interests adverse to those of the Class members.

**Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests**

63.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendants' property insurance policies that use the same language and terms as the Policy. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

**Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate**

64.    This action also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiff and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The Class members' claims all derive directly from Defendants' systematic and uniform refusal to pay insureds for any losses suffered that they attribute are due to risk of infection

of COVID-19 and/or actions of civil authorities to suspend or prohibit access to and occupancy of the business. Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories. Plaintiff and Class members are entitled to a declaration regarding their rights and obligations under such agreements, including whether Defendants are obligated to pay claims under the Policy and similar policies based on the facts and circumstances alleged above and the "all risk" nature of such insurance policies and whether the claims at issue constituted Covered Causes of Loss.

**Superiority**

65.     To the extent applicable to certification of a Class under these circumstances, this action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

66.     Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational

economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Classes would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

67.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

68.     Particularly as to the interpretation of the scope of the provisions of the Policy set forth above, certification of the Classes may also be appropriate under Fed. R. Civ. P. 23(c)(4), which provides that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."

69.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies

and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and/or utilize Rule 23(c)(5) to divide any portion of the Classes into subclasses that are each treated as a class.

## CAUSES OF ACTION

### COUNT I:  DECLARATORY JUDGMENT

**(On behalf of the Business Income Coverage Class)**

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

72.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

73.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy and the policies of other Business Income Coverage Class members.

74.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

75.     Plaintiff and Business Income Coverage Class members suffered direct physical loss of and/or damage to Plaintiff's insured premises and other Class members' insured premises, resulting in interruptions or suspensions of business operations at the premises. These suspensions and interruptions have caused Plaintiff and Business Income Coverage Class members to suffer losses of business income.

76.     These suspensions and interruptions, and the resulting losses, triggered business income coverage under the Policy and other Business Income Coverage Class members' policies.

77.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

78.     Defendants dispute that the Policy and other Business Income Coverage Class members' policies provide coverage for these losses.

79.     Plaintiff seeks a Declaratory Judgment that its Policy and other Business Income Coverage Class members' policies provide coverage for the losses of business income attributable to the facts set forth above.

80.     An actual case or controversy exists regarding Plaintiff's and other

Business Income Coverage Class members' rights and Defendants' obligations to reimburse Plaintiff and other Business Income Coverage Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Business Income Coverage Class members' policies provide coverage for Class members' losses of business income.

## COUNT II:  BREACH OF CONTRACT

### (On behalf of the Business Income Coverage Class)

81.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.    Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

83.    Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

84.    In the Policy, Defendants promised to pay for losses of business income incurred as a result of perils not excluded under the Policy. Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

85.     Plaintiff and Business Income Coverage Class members have suffered a direct physical loss of and/or damage to Plaintiff's insured premises and other Business Income Coverage Class members' insured premises as a result of interruptions or suspensions of business operations at these premises.   These interruptions and suspensions have caused Business Income Coverage Class members to suffer losses of business income.

86.     These losses triggered business income coverage under both the Policy and other Business Income Coverage Class members' policies.

87.     Plaintiff and the other Business Income Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

88.     Defendants have denied coverage and refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Business Income Coverage Class members' policies.

89.     As a result of Defendants' breaches of the Policy and other Business Income Coverage Class members' policies, Plaintiff and other Business Income Coverage Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, both individually and on behalf of other Business

Income Coverage Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT III: DECLARATORY JUDGMENT

### (On behalf of the Extra Expense Coverage Class)

90.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein, as applicable to this Class.

91.    Plaintiff brings this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

92.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

93.    Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by the Policy and the policies of other Expense Coverage Class members.

94.    Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiff and other Extra Expense Coverage Class members during the period of restoration that the insureds would not have incurred if there had been no loss or

damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and/or to repair or replace property.

95.    Plaintiff and Extra Expense Coverage Class members suffered direct physical loss of and/or damage to Plaintiff's business and other Extra Expense Coverage Class members' insured premises, resulting in suspensions or interruptions of business operations at these premises.  As a result, Plaintiff and other Extra Expense Coverage Class members have incurred Extra Expenses, as defined in the Policy and other Extra Expense Coverage Class members' policies.

96.    These Expenses triggered Extra Expense coverage under the Policy and other Extra Expense Coverage Class members' policies.

97.    Plaintiff and the other Extra Expense Coverage Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

98.    Defendants dispute that the Policy and other Extra Expense Coverage Class members' policies provide coverage for these Extra Expenses.

99.    Plaintiff, both individually and on behalf of the other members of the Extra Expense Coverage Class, seeks a Declaratory Judgment that its Policy, and the policies of other members of the Extra Expense Coverage Class, provide coverage for these Extra Expenses.

100.   An actual case or controversy exists regarding Extra Expense Coverage Class members' rights and Defendants' obligations under Extra Expense Coverage Class members' policies to reimburse Class members for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Extra Expense Coverage Class members' policies provide coverage for Class members' Extra Expenses.

## COUNT IV: BREACH OF CONTRACT

### (On behalf of the Extra Expense Coverage Class)

101.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein, as applicable to this Class.

102.   Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Coverage Class.

103.   Plaintiff's Policy, as well as the policies of other Extra Expense Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Extra Expense Coverage Class members' losses for claims covered by the Policy.

104.   Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiff and other Extra Expense Coverage Class members during the period of

restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and/or to repair or replace property.

105.   Plaintiff and Extra Expense Coverage Class members suffered direct physical loss of and/or damage to the Plaintiff's business and other Extra Expense Coverage Class members' insured premises, resulting in suspensions and interruptions of business operations at these premises.  These suspensions and interruptions have caused Extra Expense Coverage Class members to incur Extra Expenses.

106.   These Expenses triggered Extra Expense coverage under the Policy and other Extra Expense Coverage Class members' policies.

107.   Plaintiff and the other Extra Expense Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

108.   Defendants have denied coverage and refused performance under the Policy and other Extra Expense Coverage Class members' policies by denying coverage for these Extra Expenses. Accordingly, Defendants are in breach of the Policy and other Extra Expense Coverage Class members' policies.

109.   As a result of Defendants' breaches of the Policy and other Class

members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Extra Expense Coverage Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Extra Expense Coverage Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT V: DECLARATORY JUDGMENT

### (On behalf of the Civil Authority Coverage Class)

110. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein, as applicable to this Class.

111. Plaintiff brings this Count both individually and on behalf of the other members of the Civil Authority Coverage Class.

112. Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

113. Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses for claims covered by the policies.

114. In the Policy and other Class members' policies, Defendants promised

to pay for losses of business income sustained and extra expenses incurred when, among other things, access to an insured's premises is specifically prohibited by a Civil Authority Order as the direct result of a Covered Cause of Loss to property in the immediate area of the insured premises.

115.    Plaintiff and other Civil Authority Coverage Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited public access to insured premises under the Policy and Civil Authority Coverage Class members' policies.

116.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Civil Authority Coverage Class members' policies.

117.    Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

118.    Defendants dispute that the Policy provides coverage for these losses.

119.    Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses that Civil Authority Coverage Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

120.    An actual case or controversy exists regarding Civil Authority Coverage Class members' rights and Defendants' obligations under Civil Authority

Coverage Class members' policies to reimburse Civil Authority Coverage Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, both individually and on behalf of other Civil Authority Coverage Class members, requests that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VI: BREACH OF CONTRACT

### (On behalf of the Civil Authority Coverage Class)

121.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein, as applicable to this Class.

122.   Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

123.   Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Civil Authority Coverage Class members' losses and expenses covered by the Policy.

124.   In the Policy and other Civil Authority Coverage Class members' policies, Defendants promised to pay for losses of business income sustained and

extra expenses incurred when, among other things, access to an insured's premises is specifically prohibited by a Civil Authority Order as the direct result of a Covered Cause of Loss to property in the immediate area of the insured premise.

125.   Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited public access to insured premises under the Policy and Civil Authority Coverage Class members' policies.

126.  These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Civil Authority Coverage Class members' policies.

127.   Plaintiff and the other Civil Authority Coverage Class members have complied with all applicable provisions of the Policy, including payment of premiums.

128.   Defendants have refused performance under the Policy and other Civil Authority Coverage Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendants are in breach of the Policy and other Civil Authority Coverage Class members' policies.

129.   As a result of Defendants' breaches of the Policy and other Civil Authority Coverage Class members' policies, Plaintiff and other Civil Authority Coverage Class members have suffered actual and substantial damages for which

Defendants are liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and other Civil Authority Coverage Class members' policies. and seek all other relief deemed appropriate by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.   Entering an order certifying the proposed Classes, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

B.   Entering declaratory judgments on Counts I, III, and V in favor of Plaintiff and the members of the Business Income Coverage Class, Extra Expense Coverage Class, and Civil Authority Coverage Class as follows:

    i.   That all Business Income, Extra Expense, and Civil Authority losses and expenses incurred and sustained based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiff's and Class members' policies; and

    ii.   Defendants are obligated to pay for the full amount of the Business Income, Extra Expense, and Civil Authority losses and

34

expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiff and Class members' policies;

C.    Entering judgments on counts II, IV, and VI in favor of Plaintiff and the members of the Business Income Coverage Class, Extra Expense Coverage Class, and Civil Authority Coverage Class, and awarding damages in amounts to be determined at trial, as applicable;

D.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.    An award of costs and attorneys' fees; and

F.    Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: June 3, 2020                    **WHATLEY KALLAS, LLP**

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr.
W. Tucker Brown
2001 Park Place North
Suite 1000
Birmingham, AL  35203
Phone:  (205) 488-1200
Fax:  (800) 922-4851
Email:  jwhatley@whatleykallas.com
          tbrown@whatleykallas.com

**WIGGINS CHILDS PANTAZIS
FISHER & GOLDFARB**

*/s/ Dennis G. Pantazis*

Dennis G. Pantazis
D.G. Pantazis, Jr.
The Kress Building
301 19th Street North
Birmingham, AL  35203
Phone:  (205) 314-0500
Fax:  (205) 254-1500
Email:  dgp@wigginschilds.com
          dgpjr@wigginschilds.com

**PENN & SEABORN, LLC**

*/s/ Myron C. Penn*

53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel:  (334) 738-4486
Fax:  (334) 738-4432
Email: myronpenn28@hotmail.com

**JOHNSTONE CARROLL, LLC**

*/s/ F. Inge Johnstone*

F. Inge Johnstone
2204 Lakeshore Drive
Suite 303
Homewood, AL  35209
Telephone: (205) 383-1809
Facsimile:  (888) 759-3882
Email: ijohnstone@johnstonecarroll.com