UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PURE FITNESS LLC,** | } |
| Plaintiff, | } |
| v. | } Case No.: 2:20-CV-775-RDP |
| **TWIN CITY FIRE INSURANCE COMPANY,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Pure Fitness, LLC operates a gym in Alabama. Defendant Twin City Fire Insurance Company issued a business insurance policy to Plaintiff covering the period October 11, 2019 to October 11, 2020. (Doc. # 18, ¶ 2; Doc. # 18-1 at 11). In its First Amended Class Action Complaint, Plaintiff alleges that it suffered significant financial losses because it was "forced to suspend business operations due to risks presented by the infectious disease 'COVID-19' and/or actions of civil authorities prohibiting public access to and occupancy of the business premises and rendering occupancy of the premises by customers unlawful and untenantable." (Doc. # 18, ¶ 10). Plaintiff seeks to have Twin City cover its COVID-19 related losses under its business insurance policy. (Doc. # 18 at 42-43).

This matter is before the court on Defendant's Motion to Dismiss the First Amended Class Action Complaint. (Doc. # 20). The Motion has been fully briefed and is ripe for decision. (Docs. # 20-1, 30, 31, and 33). For the following reasons, the Motion is due to be granted.

**I.    Background**

In the property insurance section of Plaintiff's "all-risk" business insurance policy with Defendant ("the Policy"), Defendant agreed to pay Plaintiff "for direct physical loss of or physical

damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (Doc. # 18-1 at 25). The Policy also protects Plaintiff against a loss of business income due to a "suspension" of its "operations" due to "direct physical loss or physical damage to the Covered Property at the [scheduled] premises … caused by or resulting from a 'Covered Cause of Loss'" (Doc. # 18 ¶¶5, 21, 23, 26). The Policy defines "Covered Causes of Loss" as "risks of direct physical loss," unless the loss is excluded or limited in other Policy provisions. (Doc. # 18-1 at 26 (capitalization altered)).

The policy also contains a three-page endorsement entitled "Limited Fungi, Bacteria or Virus Coverage," and that endorsement contains a virus exclusion. (Doc. # 18-1 at pp. 84-87). The virus exclusion provides:

> [Twin City] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1)   Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus.

(Doc. # 18-1 at 84). What limited coverage this endorsement does provide "only applies when the ... virus is the result of one or more of the following causes ... (1) A 'specified cause of loss' other than fire or lightning; (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises." (Doc. # 18-1 at 85). "Specified cause of loss" is defined in the Special Coverage Property Form and means: "Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." (Doc. # 18-1 at 49).

Plaintiff alleges that in March 2020, it was forced to suspend its business operations due to the risks of direct physical loss presented by the COVID-19 pandemic and/or the actions of civil

authorities prohibiting access to and the occupancy of the business premises to prevent the spread of the pandemic. (Doc. # 18 ¶¶10, 38-44). Plaintiff was forced to suspend its business operations and close its doors to customers for a period of at least 56 days as a result of various Civil Authority Actions. (Doc. # 18 ¶¶45-46). Plaintiff seeks to recover from Defendant its business-income losses and extra expense that it incurred because of the suspension of its business operations, which Defendant has refused to pay (Doc. # 18, ¶¶ 60, 81–140).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations of a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. Appx. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

When a court rules on a 12(b)(6) motion to dismiss, it generally is "limited to reviewing what is within the four corners of the [plaintiff's] complaint." *Brickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). If a court looks beyond the plaintiff's complaint, usually it "must convert the motion to dismiss into one for summary judgment." *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir. 1985). But, an exception exists "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). When this happens and the authenticity of the document is not at issue, "the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id.*; *see also Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500

F.3d 1276, 1284–85 (11th Cir. 2007) (considering an insurance policy attached to a motion to dismiss "because it is referred to in the complaint, it is central to [the plaintiff's] claim, . . . and neither party challenges its authenticity").

**III.   Analysis**

In diversity cases -- like this one -- the court applies the substantive law of the forum state, Alabama. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Eleventh Circuit Court of Appeals recently provided a succinct summary of how courts interpret insurance contracts in Alabama:

> "In Alabama, the interpretation of a contract, including an insurance contract, is a question of law reviewed *de novo*." *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007). Alabama courts "enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005). Alabama courts give the terms the meaning that "a reasonably prudent person applying for insurance would have understood the term[s] to mean." *Id.* at 1144 (alteration adopted) (internal quotation marks omitted). That is, Alabama courts ordinarily do "not define words ... based on technical or legal terms." *Id.* at 1143; *see also Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 571 (Ala. 1991); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 6, at 69 (2012) ("Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."). To be sure, when construing "exceptions to coverage," Alabama courts construe them "as narrowly as possible in order to provide maximum coverage." *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987); *see also Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002). But those courts remain careful not "to rewrite policies to provide coverage not intended by the parties." *Johnson*, 505 So. 2d at 365.

*Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1140 (11th Cir. 2020). Whether an exclusion is ambiguous or unambiguous is a question of law. *See Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007); *Upton v. Miss. Valley Title Ins. Co.*, 469 So. 2d 548, 553 (Ala. 1985).

Defendant's Motion to Dismiss focuses on the "Limited Fungi, Bacteria or Virus Coverage and the virus exclusion. (Doc. # 18-1 at pp. 84-87). The virus exclusion has two exceptions (1)

when the virus results from fire or lightning or (2) when the limited additional coverage applies. (*See* Doc. 18-1 at 84). The limited additional coverage "only applies" if, among other conditions, the virus results from certain "specified cause[s] of loss" not at issue here (*e.g.*, windstorm, hail, volcanic action) or from an equipment breakdown. (*Id.*at 49, 85; *see also Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co*., 2021 WL 131556, at *9 (E.D. Pa. Jan. 14, 2021). Plaintiff does not allege that either of these exceptions applies. (Doc. # 18).

In response to Defendant's Motion, Plaintiff first argues that it is not appropriates to consider the virus exclusion at this stage of the litigation. (Doc. # 30 at 10-13). The court disagrees. Courts routinely grant motions to dismiss when an exclusion provision in an insurance policy applies to an action. "The Court may answer that question and apply an unambiguous exclusion without discovery or factual development." *E.g*., *Part Two LLC v. Owners Ins. Co*., 2021 WL 135319, at *4 (N.D. Ala. Jan. 14, 2021) (citing *Robinson v. Liberty Mut. Ins. Co*., 958 F.3d 1137 (11th Cir. 2020) (applying Alabama law to an exclusion within an insurance contract, finding no ambiguity, and affirming insurer's motion to dismiss based on the exclusion)).

Plaintiff next argues that the virus exclusion is ambiguous and that it does not apply. (Doc. # 30 at13-22). However, a number of courts around the country, including one within this Circuit, have examined the precise virus exclusion at issue here and have determined that (1) the exclusion is unambiguous, and (2) it precludes coverage for COVID-19 related losses. *See Digital Age Marketing Group, Inc. v. Sentinel Insurance Co. Ltd.*, 2021 WL 80535 (S.D. Fla. Jan. 8, 2021) (interpreting the same policy language at issue in this case and dismissing claims against insurer for COVID-19-related losses based on policy's virus exclusion on a Rule 12(b)(6) motion); *see also TAQ Willow v. Twin City Fire Insurance Co*., 2021 WL 131555 (E.D. Pa. Jan. 14, 2021) (interpreting the same policy language at issue in this case and dismissing with prejudice claims

against Twin City for COVID-19-related losses based on, *inter alia*, policy's virus exclusion); *Zagafen Bala, LLC v. Twin City Fire Insurance Co.*, 2021 WL 131657 (E.D. Pa. Jan. 14, 2021) (interpreting the same policy language at issue in this case and dismissing with prejudice claims against Twin City for COVID-19-related losses and stating "Even if Plaintiffs had plausibly alleged their losses qualified for Business Income Coverage or Civil Authority Coverage, the Virus Exclusion precludes coverage."); *Moody v. Hartford Financial Group, Inc.*, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021) (interpreting the same policy language at issue in this case and dismissing with prejudice claims against insurer for COVID-19-related losses, holding virus exclusion precluded coverage); *ATCM Optical, Inc. v. Twin City Fire Insurance Co.*, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021) (interpreting the same policy language at issue in this case and dismissing with prejudice claims against Twin City for COVID-19-related losses, finding virus exclusion is unambiguous and precluded coverage); *Franklin EWC, Inc. v. Hartford Financial Services Group, Inc.*, 2020 WL 7342687 (N.D. Cal. Dec. 14, 2020) (interpreting the same policy language at issue in this case, dismissing with prejudice claims against insurers for COVID-19-related losses, and stating "the Virus Exclusion applies under its plain and unambiguous language"); *accord Part Two*, 2021 WL 135319, * 4 (dismissing claims against insurer for COVID-19-related losses with prejudice based on virus exclusion and stating "The policy unambiguously excludes virus-caused losses, and neither the origin nor the evolution of the exclusion can create ambiguity where none exists.").[1]

---

[1] The court recognizes that in September 2020, a court in the Middle District of Florida noted that the language of the virus exclusion before it was "arguably ambiguous", but determined that determination of coverage was inappropriate at that time because the court did not have the entire policy before it. *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co.*, 2020 WL 5939172, at *4 (M.D. Fla. Sept. 24, 2020). First, the entire policy is before the court. Second, and to the extent that single court found the policy ambiguous, this court disagrees with that conclusion.

This court agrees with these decisions. COVID-19, which was the root cause of Plaintiff's losses, is a virus. The policy at issue in this case excludes coverage for losses caused, even in part, by a virus. There are certain exceptions to this rule, but they do not apply here. "Plaintiffs offer no basis for construing 'COVID-19' or the 'pandemic' as a non-virus for purposes of this exclusion. Nor can they plausibly do so, as the global spread, proliferation, and activity of 'coronavirus' is the underlying pandemic at issue. Indeed, they cite no cases where courts have determined that COVID-19 is not a virus for purposes of this exclusion." *Mena Catering, Inc. v. Scottsdale Ins. Co.,* 2021 WL 86777, at *8 (S.D. Fla. Jan. 11, 2021) (quoting R*aymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 2020 WL 6392841, at *10 (S.D. Fla. Nov. 2, 2020)). Therefore, the court similarly concludes here that the virus exclusion at issue is unambiguous and precludes coverage for Plaintiff's claimed losses in this case.

Finally, Plaintiff argues that it should be allowed the opportunity to amend its complaint if the court finds that the virus exclusion applies. (Doc. # 30 at 24). However, any such amendment would be futile. "For [Plaintiff] to prevail, the [c]ourt would have to blind itself to the virus exclusion and judicially rewrite [Plaintiff's] insurance policy," something the court cannot do. *Part Two,* 2021 WL 135319, at *4 (citing *St. Paul Fire & Marine Ins. Co. v. Britt*, 203 So. 3d 804, 811 (Ala. 2016). ("A court must not rewrite a policy so as to include or exclude coverage that was not intended.")); *see Wilson v. Hartford Cas. Co*., 2020 WL 5820800, at *9 (E.D. Pa. Sept. 30, 2020) ("Leave to amend would therefore be futile" because "the virus exclusion and its exemptions are clear and unambiguous and none of the specified causes of loss in the second exemption could plausibly apply to Plaintiffs' case.").

### IV.     Conclusion

For all of the foregoing reasons, Defendant's Motion to Dismiss the First Amended Class Action Complaint (Doc. # 20) is due to be granted.[2] A separate order will be entered.

**DONE** and **ORDERED** this February 11, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2] Although Defendant's Motion does not address the issue, the court also has substantial questions about whether there is coverage under the policy for COVID-19 related losses if the policy requires "direct physical loss of or damage" to property. *See Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, 2020 WL 5791583, at *5 (M.D. Fla. Sept. 28, 2020). However, that issue has not been fairly presented to the court.